UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>FRANCISCO FELIX, ALEJANDRO MARTINEZ, AUGUSTIN RAMIREZ, MIGUEL FELIX, SERGIO MODESTO, ANTONIO RAMIREZ, GERARDO BARRAZA, and MARTIN LOPEZ,<br><br>        Defendants. | CR. NO. 2:14-00040 WBS<br><br>MEMORANDUM AND ORDER RE: DEFENDANTS' MOTION TO SUPPRESS EVIDENCE FROM WIRETAPS |

----oo0oo----

Defendants Francisco Felix, Alejandro Martinez, Martin Rubio, and Martin Lopez move to suppress evidence from wiretap-intercepted calls or, in the alternative, for a Franks evidentiary hearing on the motion. (Docket No. 106.) Defendants Raul Rangel, Gerardo Barraza, and Augustin Ramirez joined in this motion to suppress. (Docket Nos. 114, 116, 117.) Defendants allege that the affidavit in support of the application for

1

authorization to intercept wire communications failed to establish necessity, as is required under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520.

I.  Necessity for the Wiretaps

"Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520, permits law enforcement officials to engage in electronic surveillance if certain privacy safeguards are observed." United States v. McGuire, 307 F.3d 1192, 1196 (9th Cir. 2002).  A wiretap applicant must provide, among other things, "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."  18 U.S.C. § 2518(1)(c); see also id. § 2518(3)(c) (providing that before authorizing a wiretap a judge must determine that "normal investigative procedures have been tried and failed or reasonably appear unlikely to succeed if tried or to be too dangerous").

"This necessity requirement means that the affidavit must set out a factual background that shows that ordinary investigative procedures, employed in good faith, would likely be ineffective in the particular case." United States v. Brone, 792 F.2d 1504, 1506 (9th Cir. 1986).  The showing must allege specific circumstances "to prevent the government from making general allegations about classes of cases and thereby sidestepping the requirement that there be necessity in the particular investigation in which a wiretap is sought." United States v. Ippolito, 774 F.2d 1482, 1486 (9th Cir. 1985).

           While wiretaps should not be the initial step in an investigation, law enforcement officers need not exhaust every possible investigative alternative before obtaining a wiretap. McGuire, 307 F.3d at 1196-97.  The "government is entitled to more leeway in its investigative methods when it pursues a conspiracy."  Id. at 1198.  This means that the "government's possession of evidence sufficient to indict some conspirators does not bar it from seeking evidence against others."  Id. at 1199.  The government has an interest in not only identifying all conspirators but also the full scope of the conspiracy.  Id.

           Defendants argue that the government affidavit in support of the wiretaps failed to establish that traditional investigative procedures were tried and failed.  (Mot. to Suppress at 16.)  This is demonstrated, defendants argue, by the success of two confidential informants in penetrating various cells of the Felix drug trafficking organization ("Felix DTO") through five controlled drug purchases.  (Id.)  Defendants contend that in the ten months of investigation prior to the wiretap, the government had already discovered the location of Francisco Felix's residence, place of business, and places where marijuana was being grown.  (Id.)  In particular, defendants argue that the wiretaps were unnecessary because a confidential informant had "gained the trust" of both Alejandro Martinez, who shared information "such as narcotic and firearm sources," and Francisco Felix.  (Id.)

           While traditional investigative methods were successful to a certain extent, the sixty-page affidavit of Special Agent Philipp Maurer ("Aff.") makes clear that wiretaps were necessary

to achieve all the goals of this investigation and collect proof beyond a reasonable doubt against Francisco Felix, his sources of supply, co-conspirators, and his distribution network. (Aff. ¶ 112.) The goals of the investigation were not only to identify the leaders of the organization in Tracy, California but also the sources of supply for the controlled substances and firearms, smugglers who transport and sell the controlled substances and firearms, manufacturers, locations of the manufacturing sites, individuals who sell or distribute, and methods used to collect and launder the illegal proceeds. (Id. ¶ 15.)

The first confidential informant ("CRI-1") employed by the government was able to purchase approximately one pound of methamphetamine from the Felix DTO but then informed the government that he no longer wished to participate in the investigation at the same level because he was "fearful of the FELIX DTO and what they may do to his family." (Id. ¶ 116.)

The second confidential informant ("CRI-2") earned the trust of Alejandro and Francisco Felix through the purchase of multi-pound quantities of methamphetamine and marijuana. However, Special Agent Maurer explained that it was "unlikely that trust will continue to grow to the point that Francisco FELIX feels comfortable introducing CRI-2 to the DTO's source of supply or higher echelon traffickers unless CRI-2 continues to purchase additional multi-pound quantities of methamphetamine or marijuana." (Id. ¶ 117.)

The affidavit further explained that even if the government could afford further purchases of bulk quantities, there was no guarantee that additional higher level targets would

1  be introduced to CRI-2.  (Id.)  Special Agent Maurer elaborated
2  that, in an effort to minimize the effect of confidential
3  informants and undercover agents, illicit drug traffickers
4  compartmentalize the different aspects of their illicit drug
5  trafficking activities--distribution, smuggling, transportation,
6  and storage.  (Id. ¶ 113.)  In this case, Alejandro Felix had
7  trusted CRI-2 enough to meet with him in person but had "not
8  entrusted CRI-2 with any critical information related to the
9  inner workings of the FELIX DTO."  (Id. ¶ 118.)  CRI-2 had no
10 "functional knowledge of Francisco FELIX's sources of supply for
11 methamphetamine, the methods used to transport, store, or
12 distribute the methamphetamine, the manner in which communication
13 devices are used to further methamphetamine distribution, the
14 location of assets used to further methamphetamine trafficking,
15 or the existence and/or location of records maintained outlining
16 the suppliers' methamphetamine trafficking enterprise."  (Id.)
17 Special Agent Maurer explained that if the government continued
18 to use the confidential informants, "it is reasonable to assume
19 little additional evidence [would] be developed against other
20 members of the FELIX DTO."  (Id.)  Further, it would be extremely
21 difficult to get new confidential informants to infiltrate the
22 group due to concerns over safety.  (Id. ¶ 115.)
23      The affidavit describes with sufficient specificity why
24 neither the confidential informants nor other traditional
25 investigative methods were able to penetrate the network to the
26 degree necessary to determine the full scope of the drug
27 trafficking activities and extirpate the conspiracy.  (Id.
28 ¶ 119.)  While CRI-2 had secured a certain level of trust from

1  members of the Felix DTO, the government demonstrated that it was
2  unlikely he would be able to secure any higher level information
3  regarding suppliers or the handling of assets.  Contrary to
4  defendants' argument, it was not just the cost of further
5  controlled buys that created the necessity.  (See Mot. to
6  Suppress at 17.)  As in McGuire, the effectiveness of the
7  informants was limited due to the informants' fear for their
8  lives and their inability to secure the trust necessary to
9  identify all the members of the conspiracy.  307 F.3d at 1199.
10 "Not only common sense but also our precedent confirms that the
11 existence of informants and undercover agents does not preclude a
12 necessity finding."  Id.  The government affidavit established
13 why electronic surveillance was necessary in this case.
14 Accordingly, suppression of evidence obtained from the wiretaps
15 is inappropriate.

II. *Franks* Hearing

17          Under Franks v. Delaware, 438 U.S. 154 (1978), a
18 defendant is entitled to an evidentiary hearing regarding the
19 veracity of an affidavit supporting an application "if he can
20 make a substantial preliminary showing that the affidavit
21 contain[ed] intentionally or recklessly false statements, and . .
22 . [that] the affidavit purged of its falsities would not be
23 sufficient to support a finding of probable cause."  United
24 States v. Meling, 47 F.3d 1546, 1553 (9th Cir. 1995) (citation
25 omitted).  Franks applies to omissions as well as false
26 statements.  Id.  "The necessity showing and finding" under
27 § 2518 are "material to the issuance of a wiretap order and are
28 subject to Franks."  Ippolito, 774 F.2d at 1485.

        Defendants broadly allege that the affidavit contained "inaccuracies, misstatements, and material omissions and fundamentally mischaracterized the facts and status of the investigation."  (Notice of Mot. to Suppress at 2.)  Defendants do not identify any specific misstatements or falsities but rather suggest that information regarding the success of the confidential informants was omitted from the affidavit.  However, as discussed above, the affidavit described the limited success of the confidential informants in the first ten months of the investigation and the reasons why it was unlikely the informants would obtain any additional trust or evidence.  Defendants have failed to demonstrate that the government intentionally or recklessly omitted material information regarding the confidential informants and the necessity of a wiretap from its affidavit.  Accordingly, the court must deny defendants' request for a <u>Franks</u> hearing.

        IT IS THEREFORE ORDERED that defendants' motion for suppression of evidence from wiretaps and a <u>Franks</u> hearing be, and the same hereby is, DENIED.

Dated:  December 21, 2015

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

7